**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
SARA LEE McWHITE,

                        **Plaintiff,**

      -against-

NEW YORK CITY HOUSING
AUTHORITY,

                        **Defendant.**

-----------------------------------------------------------x

                          **OPINION & ORDER**

                          **05 CV 0991 (NG) (LB)**

**GERSHON, United States District Judge:**

      Plaintiff Sara Lee McWhite brings this action against defendant New York City Housing Authority ("NYCHA") alleging that defendant: (1) discriminated against her on the basis of her race and age; (2) retaliated against her on the basis of her opposition to discriminatory practices; and (3) subjected her to a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 *et seq.* ("Title VII"); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; 42 U.S.C. §§ 1981 and 1983; New York State Executive Law §§ 290 *et seq.* ("NYSHRL"); and New York City Human Rights Law, NYC Administrative Code §§ 8-101 *et seq.* ("NYCHRL").[1]

---

[1] Plaintiff also claims in her opposing papers that she was a "member of a protected group under . . . the Americans with Disabilities Act . . . , the Equal Pay Act . . . , and the [Fair] Labor Standards Act." Pl.'s Opp. Mem. at 10. To the extent plaintiff is implying that she was discriminated against under these acts, the court will not address such claims. First, plaintiff did not make claims under these acts in either her EEOC charge or complaint. *See Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) (holding that it is inappropriate to raise new claims at the summary judgment stage). Second, even construing the plaintiff's submissions liberally, as is required for *pro se* plaintiffs, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), she offers no evidence that suggests these claims would be valid, as she merely states that she is a member of a protected group under each of the statutes.

Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff subsequently moved for injunctive relief pursuant to Rule 65 of the Federal Rules of Procedure and under Title VII and the ADEA, seeking relief from unlawful retaliation and harassment. For the reasons discussed below, defendant's motion for summary judgment is granted in its entirety, and plaintiff's motion for injunctive relief is denied.

## BACKGROUND

### I.      Statement of Facts

The following facts are undisputed unless otherwise noted:

Plaintiff is an African-American woman who was born on November 1, 1949. She began her employment with defendant in 1984 as a part-time Tenant Patrol supervisor. During her tenure, plaintiff has been promoted several times, has been given above-average evaluations, and has received much recognition for her efforts in developing NYCHA's alternative high schools. Currently, she is a Community Coordinator in the Brooklyn Office of the Department of Community Operations ("Brooklyn Office"), a position she has occupied since 1998.

Beginning in 2001, when Maggie Moats, an African-American woman born on December 2, 1960, became the Deputy Director of the Brooklyn Office, a series of incidents occurred between her and plaintiff that culminated in this lawsuit. In total, plaintiff cites thirteen incidents that occurred from 2001 to 2005 in connection with her discrimination, retaliation, and hostile work environment claims.

On November 30, 2001, Ms. Moats issued plaintiff a Counseling Memorandum for acting insubordinately in failing to report to work on November 29, 2001, and failing to contact Ms. Moats about her absence. Ms. Moats maintained that plaintiff did not report to work because of a disagreement she had with plaintiff. Plaintiff refused to sign the memorandum, and, on December

4, 2001, she issued a rebuttal and grievance with her union, in which she claimed that she did not report to work because she awoke that morning with a stiff neck and lower back pain. After defendant held a hearing, Ms. Moats issued a revised memorandum on January 9, 2002, which omitted the language about plaintiff failing to contact her, but still discussed plaintiff's insubordination. Plaintiff again refused to sign and filed another grievance with the union. The grievance was subsequently dismissed, and the revised memorandum remained in plaintiff's file.

On December 4, 2001, plaintiff was reassigned by then Director of the Brooklyn Office, Mary Starks, an African-American woman, to defendant's Drug Elimination Program. According to defendant, plaintiff was reassigned because of complaints Ms. Starks received from resident leaders regarding plaintiff's approach to the election process. Plaintiff claims such complaints are unsubstantiated. *See* McWhite Dep. Tr. at 105-06. However, plaintiff admits that the new position was commensurate with her skills and experience. She received the same pay, maintained the same hours and worked at the same locations. Her overtime, however, was reduced.

Plaintiff also claims that Ms. Moats put her on pay suspension and unfairly marked her absent without approved leave ("AWOL") on November 29, 2001 and July 1, 2002, effectively "blacklisting" her for future employment opportunities. McWhite Dep. Tr. at 142. On both days, plaintiff was out sick because of injuries she sustained in car accidents and therefore should not have been marked AWOL. Plaintiff's employment records show that, in both instances, Ms. Moats rescinded her actions and restored plaintiff's pay the day after it had bene docked.

In addition, plaintiff claims that Ms. Moats harassed her on July 1, 2002 by forcing her to go to the central office. Plaintiff had been out from work since May 10, 2002 because of injuries she sustained in a car accident but planned to return to work on July 8, 2002. Plaintiff claims that, on July 1, Ms. Moats told her that she needed to give Ms. Moats a doctor's note by the end of the

day in order to return to work on July 8. After reporting to the central office to submit the note, plaintiff was specifically told, by a different NYCHA employee, that she could not deliver the note that day, but that she would have to deliver it on July 8.

On March 14, 2003, plaintiff was reassigned by then Director of the Brooklyn Office, Carl Billington, an African-American born on July 16, 1955, to work under Lisa Davis and assist in the Program Unit. According to Mr. Billington, he reassigned plaintiff because of the dissolution of defendant's Drug Elimination Program; a March 2003 act of insubordination;[2] complaints by Resident Leaders; and his belief that plaintiff would be an asset to Ms. Davis and the Program Unit, which was in need of assistance. Plaintiff alleges that these reasons were not credible. In any event, the new position did not change plaintiff's salary, title, or work location, though plaintiff alleges she was no longer able to receive overtime. She also claims that the new position was not commensurate with her skills, since it was mostly clerical and did not require her to perform much work.

On April 15, 2003, plaintiff submitted an Incident Report describing an altercation she had witnessed on April 11 between Ms. Moats and Hajj Ali-Malik, the Center Director of the Roosevelt Houses. In the Incident Report, plaintiff wrote that Ms. Moats shouted derogatory comments at Mr. Ali-Malik, such as, "I'll have your job", "Who do you think you are, in that long black robe?", and "You may be a bean pie eating Muslim, but you don't scare me." Billington Decl. Ex. E. As a result of the incident, Mr. Ali-Malik filed an EEOC Charge of Discrimination on August 19, 2003. Plaintiff claimed during her deposition that she helped Mr. Ali-Malik with his EEOC Charge over the telephone at night and on the weekends, but never at the office. McWhite Dep. Tr. at 28-30.

---

[2] In March 2003, after Ms. Moats requested that plaintiff lower her voice, plaintiff told Ms. Moats to "go sit down." Pl.'s 56.1 Opp. ¶ 29. Although plaintiff claims she was almost given a memorandum, she was not disciplined for her actions.

Plaintiff also gave a deposition on February 2, 2005, in support of Mr. Ali-Malik's lawsuit against defendant. Defendant maintains it was unaware of any assistance plaintiff provided Mr. Ali-Malik.

On June 4, 2003, Mr. Billington issued an Instructional Memorandum to plaintiff instructing her regarding the next assignment as well as scolding plaintiff for her "hints of threats, insubordination and manipulation." McWhite Decl. Ex. E. The memorandum memorialized a May 16, 2003 meeting between plaintiff and Mr. Billington, in which they discussed plaintiff's new position and her use of work time to write personal letters regarding NYCHA's hiring practices, and after which plaintiff had written a memorandum to Mr. Billington in which she claimed he had admonished her for "exercising her rights." *Id.*

In response to Mr. Billington's Instructional Memorandum, plaintiff wrote another memorandum to Mr. Billington, claiming that his memorandum was "another attempt to harass, discredit, and intimidate this employee." *Id.* Plaintiff also filed a grievance, arguing that his memorandum should not have contained negative comments and should not have been forwarded to Labor Relations. Plaintiff then wrote a letter, dated June 13, 2003, to various agencies, including the EEOC, requesting assistance in "putting an[] end to the illegal hiring practices, promotion practices, [and] employee harassment." *Id.* The letter discussed at length the questionable demotions of employees in favor of the politically connected, and plaintiff claimed that she was reassigned and harassed because she would not "bend the rules." *Id.* Plaintiff's letter was forwarded to the NYCHA's Department of Equal Opportunity.

In July 2003, defendant posted an announcement for the position of Borough Administrator in the Brooklyn Office. Along with a number of other employees, plaintiff submitted her resume in application for the position. In August 2003, Erenisse Tavarez interviewed the applicants, including plaintiff, but, according to defendant, no one was selected for the position because budget

cuts forced it to eliminate the position. Plaintiff, however, claims that Gina Watkins, another African-American woman, actually got the position because (1) Ms. Watkins had previously been appointed "Acting" Borough Administrator in April 2003, and (2) Ms. Tavarez had told plaintiff in April that Ms. Watkins already had the position. McWhite Dep. Tr. at 73-74. Plaintiff further claims that she was more qualified than Ms. Watkins and that she was denied the promotion based on age discrimination and retaliation, although not because of her race. *Id.* at 78-79. Defendant acknowledges that Ms. Watkins was appointed "Acting" Borough Administrator in April 2003 because she had already assumed some of the responsibilities of a Borough Administrator, but maintains that she was not promoted pursuant to the vacancy posting. Ms. Watkins' employment record shows that she did not receive a change in title or raise in salary in or around August 2003.

In October 2003, defendant announced an opening for the Director of the Department of Citywide Programs, a position that entailed responsibilities for, among other things, overseeing a staff of 1,300 individuals and a program budget of approximately $7 million. Plaintiff submitted her resume in application for the position. In November 2003, Ms. Pinnock interviewed potential candidates, including plaintiff. After the interviews, Ms. Pinnock determined that none of the interviewees were qualified for the position and therefore promoted none of them. With regard to plaintiff, Ms. Pinnock stated that she was not qualified because she lacked significant managerial experience, she did not have sufficient knowledge of the Department or its programs, she had previously conflicted with resident leaders, and she did not have significant experience organizing large scale events. Eventually, Ms. Pinnock appointed Mr. Ernesto Lozano, who was then the Borough Director of Staten Island Community Operations, to the position, even though he was not interviewed. Ms. Pinnock felt that Mr. Lozano, who had served as Borough Director for approximately 8 years, had the necessary managerial experience required for the job. At her

deposition, plaintiff admitted that Mr. Lozano "has far more qualifications" than she, but that her problem with Mr. Lozano's promotion was "that it wasn't done procedurally." McWhite Dep. Tr. at 98-100. Plaintiff further stated that she was denied the promotion in retaliation, though not because of her race or age. *Id*. at 100-01.

On March 24, 2004, plaintiff received permission to use a Housing Authority van on March 25 to transport her and four other employees to defendant's central office to obtain replacement identification cards. On March 25, plaintiff reported to work and soon afterward discovered that the van had left the Brooklyn Office without her. Ms. Moats, allegedly unaware that plaintiff had received permission to use the van, directed Henry Gumps, the van driver, to use the van to take Sarah Cooper to the central office to submit or retrieve several boxes of applications and to take Leron Obie, a caretaker, to the Lafayette Houses to assess a situation with the alarm system. Plaintiff claims that Ms. Moats deliberately instructed Mr. Gumps to leave without her. Mr. Obie states that Ms. Moats told Mr. Gumps to drive him and Ms. Cooper to the central office and leave plaintiff and Crystal Warlick behind.

After learning that the van had left without her, plaintiff contacted Mr. Gumps to return to the Brooklyn Office. Although the van came back, it was no longer fit to drive because of a flat tire. Ms. Moats told Mr. Gumps, Mr. Obie, and Ms. Cooper to use her personal Housing Authority vehicle to commute to Lafayette House and then to the central office. According to Ms. Moats, her car could only fit three people because of the several boxes of applications, so she suggested that Ms. Davis, who was plaintiff's direct supervisor, arrange for plaintiff to use her vehicle to go to the central office. Plaintiff denies that she had this opportunity because she would have missed her appointment by that time.

Also in March 2004, during the time Ms. Moats was in the process of forwarding grant

proposal materials to residential associations, plaintiff claims she was accused by Ms. Moats of stealing grant proposal materials. Ms. Moats claims plaintiff took bound copies of these materials that belonged to Ms. Moats. According to plaintiff, the materials had been in her possession since 1998, and she claims that Ms. Moats' statement that plaintiff had "inappropriately removed" these documents was harassing and retaliatory. McWhite Dep. Tr. at 140. Defendant, in contrast, contends that Ms. Moats made no such statement and that she only sought a return of the copies. Most of the copies were eventually returned and plaintiff did not receive any disciplinary action.

In October 2004, defendant posted an announcement for eight Borough Administrator positions throughout the Housing Authority. Michelle Pinnock and Hugh Spence interviewed the applicants. Defendant promoted Ms. Watkins, Alexander Duque, and Rolston Hopson to Borough Administrator in the Brooklyn Office. Ms. Watkins' employee record card reflects that she received a promotion in mid-February 2005. Plaintiff was not interviewed and did not receive the promotion because: (1) she did not apply for the position; (2) she had not been recommended for the position by the Borough Directors in the spring of 2004; and (3) Ms. Pinnock was not aware that plaintiff was interested in becoming a Borough Administrator. Plaintiff argues that she should have been considered for the job despite the fact she did not apply, because, in the rejection letter she received after applying for the same position in July 2003, defendant stated that it would keep her resume on file in the event that future opportunities arose that fit her qualifications.

In addition to the above incidents, plaintiff claims that there were other "little slights and sillinesses" that she considered to be attempts by defendant, and specifically Ms. Moats, to "irk [her] for no other reason." McWhite Dep. Tr. at 142. Specifically, plaintiff claims that Ms. Moats directed her to "mind my own business" and told other employees not to speak with plaintiff as a result of the assistance she gave to other NYCHA employees, specifically Gregory Summerlin,

Natalie Henry, Debbie Lawrence, and Mr. Ali-Malik.[3] *See id.* at 151-65. According to Ms. Warlick, Ms. Moats told her not to speak with plaintiff after the March 2004 van incident. Ms. Moats denies she made such statements and also denies that she was aware of any assistance plaintiff provided to Ms. Henry, Ms. Lawrence, and Mr. Ali-Malik.

Finally, several other employees express problems with Ms. Moats. Ms. Warlick claims in her affidavit that Ms. Moats harassed her and other employees. Ms. Lawrence describes Ms. Moats as vengeful and uncooperative and claims that she did not follow NYCHA policies and procedures. Finally, Ms. Henry claims that Ms. Moats told her to spy on co-workers and admonished her for talking to plaintiff. She also characterizes Ms. Moats as having been "rude and abrasive" from the minute she arrived at the Brooklyn Office.

## II. Procedural History

On June 14, 2004, plaintiff filed a discrimination charge with the EEOC claiming that she had been discriminated against because of her race and age, retaliated against for assisting other employees, harassed, and subjected to a hostile work environment. In the charge, plaintiff discussed that she had been denied the Borough Administrator and Director of Citywide Programs positions despite her qualifications, had been "written up for frivolous issues by Maggie Moats", and had "all of [her] essential duties . . . removed by Ms. Moats." Niederhoffer Decl. Ex. N. After receiving a "Notice of Right to Sue" from the EEOC, plaintiff filed a *pro se* complaint in this court on February 23, 2005.

## DISCUSSION

---

[3] Despite plaintiff's claims, there is no evidence apart from plaintiff's mention of Mr. Summerlin in her June 13, 2003 letter, that defendant was aware of plaintiff's assistance to these employees.

## I.     Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the non-moving  party "must do more than simply show that there is some metaphysical doubt as to the material facts[;] . . . the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* at 586-87 (internal quotation marks omitted).  Mere conjecture and speculation as to the true nature of the facts will not suffice to overcome a motion for summary judgment.  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

In employment discrimination actions such as this, courts must be cautious about granting summary judgment when intent is at issue since "a victim of discrimination is . . . seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991).  Consequently, "where a defendant's intent and state of mind are placed in issue, summary judgment is ordinarily inappropriate." *Id.*  However, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  Therefore, summary judgment is appropriate, even in discrimination cases, where the standards of Rule 56 have been met. *Weinstock*

*v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000).

## II.    Title VII and ADEA claims

### A.    Timeliness and Exhaustion of Administrative Remedies

#### 1.    *Time-barred Claims*

Both Title VII and the ADEA require an employee to file an EEOC charge within 300 days of the unlawful employment practice in a state, like New York, that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (Title VII); *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (ADEA). In *Morgan*, the Supreme Court held that all discrete discriminatory acts that occurred 300 days prior to the filing of an EEOC charge, even if related to one another, are untimely and no longer actionable. 536 U.S. at 114-15. While there is a continuing violation exception to this filing requirement, it is available only when a series of acts collectively constitute one unlawful employment action. *Washington v. County of Rockland*, 373 F.3d 310, 317-18 (2d Cir. 2004). Thus, even when "an employee alleges 'serial violations,' *i.e.*, a series of actionable wrongs, a timely EEOC charge must be filed with respect to each discrete alleged violation." *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162, 2175 (2007).

Here, the incidents plaintiff alleges to be the result of discriminatory and retaliatory conduct, *i.e.*, the failure to be promoted, the issuance of memoranda, and the reassignment of her duties, are all separate and isolated acts, and thus discrete employment actions. *See Morgan*, 536 U.S. at 114 (identifying "termination, failure to promote, denial of transfer, refusal to hire" as examples of discrete employment actions). Therefore, whether or not these actions constitute "serial violations," plaintiffs' claims are subject to the 300 day filing requirement. Because plaintiff filed her EEOC charge on June 14, 2004, any alleged discriminatory act that occurred prior to August 18, 2003 is

time-barred under Title VII and the ADEA.

Plaintiff's hostile work environment claims under Title VII and the ADEA are not, however, subject to the same limitations. In hostile work environment claims, "[i]n order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." *Morgan*, 536 U.S. at 118. A plaintiff may include acts that fall outside the statutory time period, so long as an act contributing to the hostile work environment claim occurs within the filing period. *Id*. at 117.

## 2. *Claims Barred for Failure to Exhaust Administrative Remedies*

Exhaustion of administrative remedies is an "essential element" of a Title VII claim. *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). Claims not raised in an EEOC complaint are barred unless they are "reasonably related" to the claim filed with the agency. *Id*. A claim not alleged in an employee's EEOC charge is sufficiently related where the complained-of conduct would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Butts v. City of New York Dep't of Hous. Pres. and Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993), *superceded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998). The same legal standards for exhaustion of administrative remedies in Title VII claims also apply to ADEA claims. *See Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003).

Defendant argues that the following incidents should be dismissed because plaintiff failed to raise them in her charge: the reassignment of plaintiff's duties by Mr. Billington and Ms. Starks, write-ups from persons other than Ms. Moats, being marked AWOL or paydocked in 2001 and 2002, directing plaintiff to mind her own business and others not to speak with her, the alleged removal of written grant material, and the van incident. Because plaintiff failed to mention in her EEOC

charge anything pertaining to Ms. Starks, Mr. Billington, her reassignments, or the Instructional Memorandum, these issues fall outside the scope of an EEOC investigation and are therefore barred for failure to exhaust administrative remedies. However, plaintiff discussed the write-ups and removal of plaintiff's "essential duties" by Ms. Moats in her charge. Niederhoffer Decl. Ex. N. Since an investigation of all incidents between plaintiff Ms. Moats would reasonably be expected to grow out of the EEOC charge, the non-asserted incidents involving Ms. Moats may be considered.

### 3.    *Plaintiff's Non-Time Barred Claims*

As determined above, the only incidents alleged under plaintiff's Title VII and ADEA discrimination and retaliation claims that were timely filed occurred after August 18, 2003. Accordingly, the court will consider, as to these claims, only the denial of plaintiff's promotion to the 2003 and 2005 Borough Administrator positions, the denial of plaintiff's promotion to the Director of Citywide Programs position, the van incident, the grant materials incident, and plaintiff's claim that Ms. Moats ordered employees not to speak with her.[4]

With regard to plaintiff's hostile work environment claim, some of the incidents forming the basis of this claim, while timely, are barred because plaintiff failed to exhaust her administrative remedies. Specifically, the claims based on the reassignment of plaintiff's duties by Ms. Starks and Mr. Billington, and the June 4, 2003 Instructional Memorandum are barred. Moreover, to the extent that the denials of promotion were discrete acts that involved different people and were unconnected

---

[4] In her opposing papers and response to defendant's Rule 56.1 Statement, plaintiff claims she was qualified for three other positions: Manhattan Senior Program Manager, Deputy Director for Citywide Programs, and Assistant to the Assistant Deputy General Manager. Since plaintiff never mentioned these positions in her complaint, never claimed that she was discriminated or retaliated against in the denial of a promotion to any one of these positions, or cited any evidence which would suggest such a claim, the court will not address these incidents.

The court will consider the 2003 Borough Administrator position as timely filed since there is a dispute about exactly when the position was eliminated.

in any way to the harassment plaintiff has alleged, they will not be considered as part of her hostile work environment claim. Accordingly, as part of plaintiff's hostile work environment claim, the court will consider the November 30, 2001 Counseling Memorandum, the November 30, 2001 and July 1, 2002 paydocking and AWOL marking, the doctor's note incident, the van incident, the grant materials incident, and the allegations that Ms. Moats told employees not to speak with plaintiff.

## B.     Race and Age Discrimination Claims

Claims of race discrimination under Title VII and age discrimination under the ADEA are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Terry*, 336 F.3d at 137-38. Under this framework, a plaintiff must first present sufficient evidence to establish a prima facie case of race discrimination by demonstrating that: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Terry*, 336 F.3d at 138. Similarly, to establish a prima facie case of age discrimination, a plaintiff must demonstrate that: (1) she is within the protected age group; (2) she was qualified for the position; (3) she suffered adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Terry*, 336 F.3d at 138.

If the plaintiff can establish a prima facie case, the defendant must then articulate a legitimate, non-discriminatory reason for the adverse employment action. *Burdine*, 450 U.S. at 252-53. If the employer provides such a reason, the plaintiff must then prove that the allegedly legitimate reason is merely a pretext for discrimination. *Id.* "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *see also Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."). At the summary judgment stage, this means that the plaintiff "must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for [the adverse action] is false *and* as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse decision." *Gallo v. Prudential Residential Serv., Ltd.*, 22 F.3d 1219, 1225 (2d Cir. 1994). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

### 1. *Discrimination as to the 2003 Borough Administrator Position*

Plaintiff has not presented sufficient evidence to establish a prima facie case of discrimination as to the denial of promotion to the 2003 Borough Administrator position. In failure to promote cases under both Title VII and the ADEA, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for a specific position and she actually applied for it; (3) she was rejected from that position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709-10 (2d Cir. 1998) (Title VII); *Mauro v. S. New England Telecomm., Inc.*, 208 F.3d 384, 386 (2d Cir. 2000) (ADEA). Here, the undisputed evidence shows that the position of Borough Administrator did not remain open, but rather, was eliminated because of budget cuts shortly after plaintiff was denied promotion to it. While plaintiff argues that the position did in fact remain open and that Gina Watkins was hired as Borough Administrator, she bases this conclusion on the fact that, in April 2003, Ms. Watkins had been appointed "Acting" Borough Administrator and Ms. Tavarez had told her that Ms. Watkins had secured the position. McWhite Dep. Tr. at 73-74.

However, these statements do not suggest that Ms. Watkins was promoted to Borough Administrator pursuant to the July 2003 posting. The undisputed evidence shows that the position was eliminated and that Ms. Watkins was not appointed Borough Administrator in August 2003. Ms. Watkins' record card shows that she did not receive a change in title or raise in 2003. Moreover, the same job was re-posted in December 2004, at which time Ms. Watkins reapplied and eventually received the position. Plaintiff cannot raise a genuine issue of fact as to whether the position was eliminated in August 2003 based only on her conclusory allegations. Summary judgment for defendant is therefore proper.

### 2. *Discrimination as to the Director of Citywide Programs Position*

Plaintiff explicitly stated at her deposition that she was not denied the Director of Citywide Programs position because of her race or age, *see* McWhite Dep. Tr. at 100, and the court accordingly assumes that plaintiff is not alleging discrimination in being denied the position. Even if plaintiff were making such a claim, it would fail on the merits.

Assuming that plaintiff could establish a prima facie case of discrimination in the denial of promotion to Director of Citywide Programs, defendant has proffered legitimate, non-discriminatory reasons for denying her the promotion: (1) plaintiff lacked significant managerial/supervisory experience; (2) she did not have sufficient knowledge of the Department or a sufficient understanding of the programs operated by it; (3) she did not have any significant resource development experience or any experience organizing large scale citywide events; and (4) she had a history of conflicts with various resident leaders. In further support of its reasons, defendant provided evidence that shows that the candidate it did hire, Ernesto Lozano, was more qualified than plaintiff.

In response, plaintiff fails to adduce enough evidence to illustrate that these reasons were a

pretext for discrimination. Plaintiff claims that she was qualified for the position and submits her resume, cover letter, letters of recommendation, and numerous newspaper clippings discussing her various achievements. However, this evidence merely shows that plaintiff met the minimum qualifications for the position as stated in the vacancy posting. It does not, for example, prove that she had sufficient knowledge of the Department, significant resource development experience, or that she did not have a history of conflicts with various resident leaders.

Moreover, even if this evidence showed that plaintiff was qualified and that, consequently, defendant's proffered reasons were false, plaintiff submitted no evidence showing that defendant's real reason for denying her the promotion was discriminatory. The evidence in the record shows that plaintiff was denied the position only because defendant was looking for a more qualified candidate. Indeed, defendant sought a person with the managerial experience to oversee a program budget of approximately $7 million and a staff of close to 1,300 individuals, and it believed Mr. Lozano had the necessary experience. That Mr. Lozano had been a Borough Director, a position superior to Community Coordinator, for approximately 8 years supports that contention. Furthermore, plaintiff herself admitted that Mr. Lozano had "far more qualifications" than she has.[5] McWhite Dep. Tr. at 98. Unable to meet her ultimate burden of proving that the defendant intentionally discriminated against her in denying her the promotion, summary judgment is awarded to defendant.

### 3. *Discrimination as to the 2005 Borough Administrator Position*

---

[5] Contrary to her assertions in her opposing papers, nowhere in her submissions did plaintiff claim that her qualifications outweighed Mr. Lozano's in any areas. According to her deposition, plaintiff's problem with the appointment of Mr. Lozano was that he did not interview for the position. The fact that "it wasn't done procedurally," McWhite Dep. Tr. at 100, is not a sufficient basis for plaintiff's claim.

As with the 2003 Borough Administrator position, plaintiff cannot establish a prima facie case of racial discrimination in being denied the same position in 2005. As discussed above, to prove a prima facie case of discriminatory failure to promote, plaintiff must show that she actually applied for the position. Here, plaintiff did not apply for the position of Borough Administrator pursuant to the vacancy posting.

Plaintiff claims that she should have been considered anyway because, after being denied the 2003 position, she received a letter from defendant which stated that it would "keep [her] resume on file in the event that future opportunities that may best fit [her] qualifications arise." McWhite Decl. Ex. I. Accepting this argument would defeat the purpose of the application requirement, which protects employers from the unfair burden of having to "keep track of all employees who have generally expressed an interest in promotion and consider each of them for any opening for which they are qualified but did not specifically apply." *Brown*, 163 F.3d at 710. Only when an employer does not post the position will the court permit an exception to the application requirement. *See Petrosino v. Bell Atlantic*, 385 F.3d 210, 227 (2d Cir. 2004); *Mauro,* 208 at 387. Here, defendant posted the position throughout the agency. Plaintiff, although well aware of its posting, failed to apply. Accordingly, defendant is granted summary judgment on this claim.

### 4. *Discrimination as to the March 2004 Van Incident*

Plaintiff fails to establish a prima facie case of discrimination with regard to the March 2004 van incident because she fails to show that she suffered an adverse employment action. An adverse employment action is defined as a "materially adverse change" in the terms and conditions of employment. *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). "To be materially adverse, a change in work conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include

termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (internal citation and quotation marks omitted).

The March 2004 van incident does not rise to the level of actionable adverse employment action. There is no evidence that plaintiff's inability to replace her identification card on the day in question was anything more than a "mere inconvenience" of employment. Therefore, defendant is granted summary judgment on this claim.

### 5.    *Discrimination as to the Grant Materials Incident*

As with the van incident, plaintiff cannot show that she suffered an adverse employment action as a result of the grant proposal materials incident. Because plaintiff did not receive any admonishment in connection with the dispute, the incident was, at most, a "mere inconvenience" of plaintiff's employment. Accordingly, defendant is granted summary judgment.

### 6.    *Discrimination as to Ms. Moats' Alienation of Plaintiff*

Plaintiff's claim that Ms. Moats alienated her from other employees by ordering them not to speak to her also does not constitute adverse employment action. Plaintiff's alleged alienation more closely resembles an inconvenience or job alteration than an adverse employment action. Plaintiff did not receive a lower salary, loss of benefits, change in title, or diminished responsibilities as a result of the alleged conduct. Although plaintiff was "hurt" and felt "lonely" due to Ms. Moat's actions, *see* McWhite Dep. Tr. at 150, such feelings do not amount to a materially adverse change in the terms and conditions of one's employment. Thus, defendant is entitled to summary judgment.

### C.    **Plaintiff's Claims of Retaliation Under Title VII and the ADEA**

Both Title VII and the ADEA prohibit an employer from retaliating against an employee for, *inter alia*, complaining of employment discrimination under the respective act. 42 U.S.C. § 2000 e-3(a) (Title VII); 29 U.S.C. § 623(d) (ADEA). Retaliation claims under Title VII and the ADEA are analyzed under the *McDonnell Douglas* framework. *Terry*, 336 F.3d at 141. To establish a prima facie case of retaliation under Title VII or the ADEA, a plaintiff must prove that: (1) she was engaged in protected participation or opposition under Title VII or the ADEA; (2) the employer was aware of the activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. *Kessler v. Westchester County Dept. of Social Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006). As in discrimination cases, the burden of proving a prima facie case of retaliation is *de minimis. See Richardson v. New York Dept. of Corr. Servs.*, 180 F.3d 426, 444 (2d Cir. 1999), *abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2412-13 (2006).

### 1.    *Retaliation as to the 2003 Borough Administrator Position*

Plaintiff claims that she was denied the 2003 Borough Administrator position in retaliation for complaints she made and assistance she gave to other employees in filing their respective EEOC charges. Plaintiff cannot establish her prima facie case of retaliation since she fails to show that the denial to her of the 2003 Borough Administrator position was an adverse action by defendant. As detailed above, the evidence shows that no one was appointed to the position, which was eliminated shortly after being posted.

Even if plaintiff had established a prima facie case, defendant has offered a legitimate non-retaliatory reason for denying plaintiff the promotion: the position was eliminated because of budget cuts. In response, plaintiff offers no evidence to prove that this reason is false, except for her speculation that Ms. Watkins was, in effect, given the promotion. As discussed above, no evidence

supports plaintiff's contention and, in fact, the only evidence in the record directly contradicts it. Accordingly, defendant is entitled to summary judgment.

### 2. *Retaliation as to the Director of Citywide Programs Position*

Plaintiff alleges that she was denied a promotion to Director of Citywide Programs based on retaliation. However, for the same reasons discussed above, plaintiff cannot meet her ultimate burden of proving defendant's retaliatory intent in denying her the promotion. Therefore, summary judgment is granted to defendant.

### 3. *Retaliation as to the 2005 Borough Administrator Position*

Plaintiff alleges she was denied the 2005 Borough Administrator position in retaliation for her assistance to Mr. Ali-Malik in filing his EEOC charge and for filing her own EEOC charge. However, as explained above, because plaintiff never applied for the 2005 Borough Administrator position, she cannot show that defendant took any adverse action against her by not offering it to her. Nor, then, can plaintiff show that defendant's failure to consider her candidacy was in retaliation for her complaints against employment discrimination. *See Easterling v. Connecticut*, 356 F. Supp. 2d 103, 107 (D. Conn 2005) (finding plaintiff's failure to apply fatal to her claim of retaliation). Consequently, plaintiff cannot establish a prima facie case of retaliation.

Even assuming plaintiff can establish a prima facie case, she cannot defeat summary judgment on this claim. The defendant has provided legitimate, non-discriminatory reasons for denying plaintiff a promotion to the 2005 Borough Administrator position: (1) plaintiff did not apply for the position; (2) plaintiff had not been recommended for the position by the Borough Directors in the spring of 2004; and (3) the person conducting the hiring, Ms. Pinnock, was not aware that plaintiff was interested in becoming a Borough Administrator. Plaintiff counters only that she should have been considered for the position because she applied in 2003 and that she was more

qualified than Ms. Watkins, the candidate who ultimately secured the position. These statements, even if true, do nothing to show that defendant's proffered reasons were false. That plaintiff believes she should have been considered for the position does not contradict the evidence that shows that she was not. Moreover, defendant did not proffer Ms. Watkins' qualifications as a reason for denying plaintiff the position, and therefore, whether plaintiff was more qualified than Ms. Watkins is not at issue. Because plaintiff cannot demonstrate that the defendant's reasons were a pretext for retaliation, summary judgment is awarded to defendant.

### 4. *Retaliation as to the Van Incident, the Grant Materials Incident, and Ms. Moats' Alienation of Plaintiff*

Plaintiff cannot establish a prima facie case of retaliation based on these incidents because none of them amounts to adverse action. *See Burlington Northern*, 126 S.Ct. at 2414-15. Unlike discrimination claims, a plaintiff establishing a prima facie case of retaliation is not limited to materially adverse actions that are related only to employment or that occur only at the workplace. *Id.* at 2409. Any employer action that "produces an injury or harm" that is "materially adverse", that is, that might have dissuaded a reasonable worker from making or supporting a charge of discrimination, is actionable. *Id.* at 2414-15. Normally, "[p]etty slights, minor annoyances, and simple lack of good manners" will not deter a worker from making a charge of discrimination. *Id*.

The van and grant materials incidents as well as the allegations that Ms. Moats ordered employees not to speak with plaintiff are exactly the type of "minor annoyances" and "lack of good manners" that would not deter a reasonable person from filing a charge of discrimination. Indeed, these incidents did not deter plaintiff: she filed her EEOC charge on June 14, 2004 and even wrote a letter to the EEOC as early as March 29, 2004. Niederhoffer Decl. Ex. J. Accordingly, these incidents do not amount to adverse action, and plaintiff cannot assert a prima facie case of

retaliation.

**5.**     *Retaliatory Harassment*

Plaintiff alleges that she was subjected to retaliatory harassment for complaints she made and assistance she gave to her co-workers.  Specifically, plaintiff claims that Ms. Moats' actions created a hostile work environment, which qualifies as a materially adverse action under the second prong of a retaliation prima facie case.  In the Second Circuit, "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute [adverse action] so as to satisfy [this] prong." *Richardson*, 180 F.3d at 445-46.  And in order to establish that a retaliatory hostile work environment is sufficiently severe, a plaintiff must satisfy the same standard applied in hostile work environment claims, namely that the "incidents of harassment following complaints were sufficiently continuous and concerted to have altered conditions of an employee's employment." *Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 365 (S.D.N.Y. 2006); *Mormol v. Costco Wholesale Co.*, 364 F.3d 54, 58 (2d Cir. 2004) (stating that a hostile work environment claim requires a showing that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment).  A work environment is considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it. *Mormol*, 364 F.3d at 58.  In determining whether a reasonable person would perceive the environment as hostile, the court looks at the totality of circumstances, including the frequency of the conduct, the severity of the harm, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance. *Id*.

The Second Circuit has cautioned against setting the bar too high for hostile work environment claims, holding that "the fact that the law requires harassment to be severe or pervasive

before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Terry*, 336 F.3d at 148. The test is whether "the harassment is of such a quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse.*" *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (internal quotation marks omitted). Nonetheless, "incidents that are relatively minor and infrequent will not meet the standard for a discriminatory hostile work environment." *Deters v. Lafuente*, 368 F.3d 185, 189 (2d Cir. 2004) (internal quotation marks omitted) (in the context of a First Amendment retaliation claim). As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). There is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment; rather, courts view the circumstances in their totality, examining the nature, severity, and frequency of the conduct. *Id.* at 379.

Plaintiff claims that Ms. Moats harassed her by: (1) issuing her the November 30, 2001 Counseling Memorandum; (2) "paydocking" her and marking her AWOL for failing to report to work on November 29, 2001 and (3) on July 1, 2002; (4) making her report to the central office on July 1, 2002; (5) accusing her of stealing grant materials in March 2004; (6) ordering a van to go to the central office on March 25, 2004; and (7) telling co-workers not to speak with her. Evaluating the totality of the circumstances, it is clear from the nature, severity, and frequency of these seven incidents that plaintiff's claim falls below the threshold required to establish a hostile work environment. *See, e.g.*, *id.* (citing cases in which evidence was found insufficient, as a matter of law, to establish a hostile work environment claim). All of the incidents were neutral, on their face, and do not, in and of themselves, suggest that Ms. Moats was engaging in retaliation. *See id.* at 378. Facially neutral incidents may be included in the totality of circumstances a court uses to consider

a hostile work environment claim, so long as a reasonable fact finder could conclude that the incidents were based on a discriminatory or retaliatory motive. *Id*. But here, the record does not indicate or suggest such a conclusion. Statements from plaintiff's own witnesses support the notion that Ms. Moats was not acting out of retaliatory animus but that she was generally a "harsh, unjust, and rude" boss. *Id*. at 377. According to Debbie Lawrence, "Ms. Moats came in with a vengeance as if she knew everyone already. She was very defensive to all of the employees in our office. She introduced herself and made statements about not being afraid of writing people up and went as far as letting us know that she has had employees fired." Lawrence Decl. ¶ 3. In addition, Natalie Henry stated that, "[f]rom the first day Ms. Moats was introduced to the employees . . . she was rude and abrasive." Henry Decl. ¶ 4. General rude behavior is insufficient to demonstrate a hostile work environment. *See Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318-19 (2d Cir. 1999).

Moreover, the timing of the incidents undermines plaintiff's claim of retaliation. The November 30, 2001 and July 1, 2002 incidents occurred well before plaintiff engaged in any of her protected activities and thus cannot support a casual connection between the protected activity and the adverse action.[6]

The incidents were also too few, sporadic, and isolated to create a genuine issue of fact as to whether plaintiff experienced a pervasive hostile work environment. Seven incidents occurring at three different times—November 2001, July 2002, and March 2004—over two and a half years is neither sufficiently continuous nor concerted to amount to a pervasive hostile work environment.

---

[6] To constitute protected activity, the plaintiff must "have had a good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII or the ADEA." *Kessler*, 461 F.3d at 210. Under this standard, plaintiff's June 13, 2003 letter, June 14, 2004 EEOC charge, and her assistance to other employees constitute protected activity. The court finds undisputed that defendant was unaware of the assistance plaintiff gave to other employees until she gave a deposition in support of Mr. Ali-Malik on February 2, 2005. Indeed, plaintiff concedes that she did not assist employees while at work.

*See, e.g.*, *Stembridge v. City of New York*, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) (seven incidents over the course of three years held insufficient to establish a hostile work environment).  There is insufficient evidence to support an inference that these incidents affected plaintiff on a daily basis.

In *Terry*, the court found that plaintiff's hostile work environment claim was pervasive based mostly on the statements of a co-worker who testified that: (1) plaintiff's supervisors took action against Mr. Terry on a daily basis; (2) she was told several times not to speak to plaintiff; (3) in one particular incident, she was ordered away from plaintiff while talking to him; and (4) at least on a weekly basis, another supervisor yelled at plaintiff.  336 F.3d at 149.  Here, the evidence is markedly different.  There exists in the record only one instance in which an employee was told not to speak to plaintiff.  *See* Warlick Decl. ¶ 7.  While plaintiff claims other employees would not speak to her, she cites no evidence of when employees would not speak to her or how often this occurred.  Nowhere does plaintiff claim that these episodes of harassment occurred on a daily basis.  Furthermore, the evidence does not suggest that the employees would not speak to plaintiff, especially in light of Ms. Warlick's statement that she refused to abide by Ms. Moats' orders.  *Id.*

These incidents are not severe enough to overcome their lack of pervasiveness.  Many of the incidents plaintiff alleges to be harassing were relatively minor.  *See Deters,* 368 F.3d at 187-89 (characterizing "being castigated for not doing his job, accused of failing to respond to phone calls, . . . , issued a summons . . . for failing to remove ice from [his] home . . . , told . . . he would never get selected for a specialized position, and ordered to remain at a street corner for hours" as minor incidents of harassment).  Moreover,  plaintiff does not claim that she was unable to perform the basic tasks of her job or that the harassment directly interfered with her ability to perform her job.  Plaintiff's contention that this harassment made her feel "hurt" and "lonely" may show that she subjectively experienced a hostile work environment, but plaintiff cannot objectively show that the

harassment was so severe as to have negatively altered the conditions of her employment. *See Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (even where a victim subjectively perceives the environment to be abusive, she must show that the misconduct was severe or pervasive enough to create an objectively hostile or abusive work environment).

Ultimately, in examining the totality of the circumstances, no reasonable fact finder could find that plaintiff was subject to a workplace "permeated with [retaliatory] intimidation, ridicule, and insult." *Mormol*, 364 F.3d at 58. That plaintiff was subjected to a few inappropriate actions over the course of two and a half years suggests, at most, that she worked in an unfriendly environment with an unjust boss. However, Title VII does not establish a "general civility code" for the workplace. *Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999). Accordingly, summary judgment is awarded to defendant on plaintiff's claims of retaliatory harassment.

### D. Hostile Work Environment Claims under Title VII and the ADEA[7]

To prevail on a hostile work environment claim under Title VII, a plaintiff must not only demonstrate that the harassment was sufficiently severe or pervasive, but also that she was subjected to the hostility because of her membership in a protected class. *Brennan*, 192 F.3d at 318. The analysis for an ADEA hostile work environment claims is the same as under Title VII. *Id*.

As discussed above, plaintiff does not proffer a genuine issue of fact as to whether she was subjected to a hostile work environment. Moreover, even if she did, plaintiff presents no evidence that any of the harassment she was subjected to was linked to her race or age. All of the incidents

---

[7] The court rejects defendant's argument that plaintiff's hostile work environment claim should be dismissed because it was not alleged in the complaint, since this court is required to construe *pro se* litigants submissions liberally and consider the strongest arguments they suggest. *Triestman*, 470 F.3d at 474. Because plaintiff alleged in her complaint that she was harassed, and in her EEOC charge that she was subjected to a hostile work environment, the court will consider the claim.

plaintiff alleges to be hostile are, on their face, age- and race-neutral. Moreover, no reasonable fact finder could conclude that any of the alleged incidents of harassment were a result of plaintiff's race or age, as required for facially-neutral incidents. *Alfano*, 294 F.3d at 378. First, no age- or race-based remarks were ever made to plaintiff in any one of these incidents. Second, plaintiff herself states that the hostility she received was the result of complaints she had made and not the result of age- or race-based animus. Pl.'s Opp. Mem. at 9. Lastly, Ms. Moats herself was, at the time of the alleged incidents, an African-American woman over the age of 40. In short, plaintiff cannot create a genuine issue of fact that she suffered from an age- or race-based hostile work environment since there is no evidence that even remotely suggests plaintiff was subjected to hostility because of her race or age. Therefore, summary judgment is awarded to defendant on plaintiff's hostile work environment claim.

## III.    Plaintiff's 42 U.S.C. § 1981 and § 1983 Claims

Although the Complaint refers to 42 U.S.C. §§ 1981 and 1983, plaintiff does not otherwise address these statutes in her complaint or opposition papers. Section 1981 outlaws race-based discrimination in the making and enforcement of contracts, including employment contracts, *see Patterson v. McLean Credit Union*, 491 U.S. 164, 171 (1989), and retaliation where the alleged conduct provoking the retaliation involved racial discrimination, *see Moore v. Consolidated Edison Co. of New York*, 409 F.3d 506, 508 n.2 (2d Cir. 2005). Section 1983 governs civil rights actions against someone acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *Patterson v. County of Oneida*, 375 F.3d at 225.

Claims under § 1981 and § 1983 are subject to a three year statute of limitations. Even

applying this longer statute, there are no claims asserted by plaintiff which raise an issue of fact that she was discriminated against on the basis of race or retaliation. Moreover, when the defendant that is sued for discrimination under § 1981 or § 1983 is a municipality, as is the case here, it may not be held liable simply for employing a tortfeasor. *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 733-36 (1989) (§ 1981); *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978) (§ 1983). The plaintiff must show that the municipality itself caused the constitutional violation at issue, *City of Canton v. Harris*, 489 U.S. 378, 385 (1986), but "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 824-25 (1985). Here, plaintiff has failed to identify even one municipal policymaker or employee below the policymaking level who engaged in any unconstitutional action. *See id.* at 821. The record also indicates that defendant's existing policies explicitly forbid discriminatory employment actions. McWhite Decl. Ex. H at 17. Because there is no basis in the record from which a reasonably jury could find municipal liability, summary judgment is granted to defendant.

## IV.     Section 1985(3)

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must claim that there was "(1) a conspiracy (2) to deprive a person or a class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). Here, plaintiff does not allege that defendant engaged in a conspiracy nor does she cite any facts which could show

defendant was engaged in a conspiracy. Any claims plaintiff has under § 1985(3) are unsupported, and summary judgment is awarded to defendant.

V.      **Plaintiff's NYSHRL and NYCHRL Claims**

Plaintiff's remaining claims include discrimination, retaliation, and hostile work environment under NYSHRL and NYSCRL. Claims brought under NYSHRL and NYSCRL are "analyzed under the same substantive standards as claims brought under Title VII." *Payne v. MTA New York City Transit Authority*, 349 F. Supp. 2d 619, 629 (E.D.N.Y. 2004); *Mack v. Otis Elevator Co.*, 216 F.3d 116, 122 n.2 (2d Cir. 2003). Therefore, for the same reasons that plaintiff's federal claims are dismissed, plaintiff's state and local claims are also dismissed.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted in its entirety and plaintiff's motion for injunctive relief is accordingly denied. The Clerk of Court is directed to enter judgment for defendant.


                                        **SO ORDERED.**


                                _____/s_____
                                **NINA GERSHON**
                                **United States District Judge**


Dated: Brooklyn, New York
      April 10, 2008